**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

_____

| | | |
|---|---|---|
| **WAYNE RANDALL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 09-2267-STA** |
| | ) | |
| **MEMPHIS CITY SCHOOLS, et al.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

_____

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
_____

Before the Court is Defendants' Motion for Summary Judgment (D.E. # 23) filed on August 31, 2010.  Plaintiff Wayne Randall has filed a response in opposition on October 1, 2010. For the reasons set forth below, the Motion is **GRANTED**.

## BACKGROUND

The following facts are not in dispute for purposes of this Motion.  Plaintiff Wayne Randall ("Plaintiff") was a tenured teacher with Defendant Memphis City Schools ("MCS") and a football coach at East High School ("East") for sixteen years.  (Defs.' Statement of Undisputed Facts ¶ 1.)  Plaintiff had two jobs with MCS: football coach and classroom teacher.  (*Id*. ¶ 2.) Randall resigned his position as classroom teacher on June 1, 2006. (*Id*.)  Plaintiff was assured of a classroom teaching position for the 2006-2007 school year.  (*Id*. ¶ 3.)  During his tenure as football coach at East, Plaintiff worked for eight different principals. (*Id*. ¶ 4.)  In the Memphis City Schools, principals have the right to chose who their coaches and athletic directors will be. (*Id*.) Defendant Fred Curry ("Curry") was appointed the principal of East in June 2005.  (*Id*. ¶ 5.)

1

Curry is African-American, and Plaintiff is white. (*Id.* ¶ 6.)

When Curry became principal at East, he perceived East to be in a crisis situation, suffering from a lack of discipline and poor morale among the staff and students. (*Id.* ¶ 7.) Curry told Plaintiff and others in the athletic department that he expected the student athletes to comply with the dress code and set an example for other students as far as behavior and grades went. (*Id.* ¶ 8.)

Curry was not happy with the tone set by the athletic department, including the football program. (*Id.* ¶ 9.) First, Curry communicated his concerns to Plaintiff and his dissatisfaction with the way that Plaintiff was running the football program. (*Id.*) Curry had concerns about Plaintiff spending money for the football program that it had not yet collected for equipment. (*Id.* ¶ 10.) Curry's concerns and refusal to purchase equipment led to a conflict between Curry and Plaintiff. (*Id.*) Second, Plaintiff used profanity towards his players. (*Id.* ¶ 11.) Curry did not agree with Plaintiff's approach to leading students. (*Id.*) Curry had instructed Randall not to use profanity with the football team. (*Id.*)

Third, Plaintiff violated Memphis Interscholastic Athletic Association ("MIAA") rules by scouting an opposing team and allowing his assistant coach to film one of the opposing team's games. (*Id.* ¶ 12.) Plaintiff's football team was also present with him at this game. (*Id.*) Plaintiff and his football team were asked to leave by the other high school's principal. (*Id.*) Curry reprimanded Plaintiff for his conduct in the situation. (*Id.*) Plaintiff's actions also violated Curry's expectations of leadership at East, which he had communicated to Plaintiff. (*Id.*) Curry was advised, and it is MCS policy, that principals have discretion in choosing their football coaches. (*Id.* ¶ 13.) The position of football coach is not a tenured position. (*Id.* ¶ 14.) The

2

position is governed by a year-to-year contract, terminable at the end of any school year. (*Id.*)

On March 10, 2006, Curry informed Plaintiff that his contract as a football coach at East would

not be renewed for the 2006-2007 school year. (*Id.* ¶ 15.)  Curry also informed the rest of the

assistant football coaches at East that their football coaching assignments would not be renewed

for the 2006-2007 school-year. (*Id.* ¶ 16.)  At the time that Plaintiff resigned his employment

with MCS, a head football coaching position was open at Cordova High School.  (*Id.* ¶ 17.)[1]

Plaintiff never applied for this position. (*Id.*)   For the 2005-2006 school year, a head football

coaching position with MCS and for a teacher with Plaintiff's experience was entitled to a

stipend in the amount of $3,458.00. (*Id.* ¶ 18.)  Plaintiff received the entire amount due under

this coaching assignment for the 2005-2006 school year. (*Id.*)  Plaintiff obtained a teaching

position and a coaching position at Munford High School with the Tipton County Schools for the

2006-2007 school year where he was paid $6,024.00 as a coach with the Tipton County Schools.

(*Id.* ¶ 19.)  Plaintiff was never transferred from East as a classroom teacher and would have been

a classroom teacher in MCS if he had not resigned his employment. (*Id.* ¶ 20.)[2]

During the 2006-2007 school-year, Curry relieved Reginald Mosby ("Mosby"), the head

basketball coach at East, from his coaching duties.  (*Id.* ¶ 23.)  Curry's reasons for terminating

Mosby were substantially the same as his reasons for not renewing Plaintiff's coaching contract.

(*Id.*)  Mosby is an African-American male.  (*Id.*)

---

[1] Defendants' brief actually reads in error "[a]t the time that Mr. Curry resigned his employment."

[2] Defendants have cited alleged facts about Plaintiff's subsequent employment at Munford High School and his dismissal from that school.  The Court finds these assertions irrelevant to the issues presented in this case.  Therefore, the Court declines to address those purported facts here.  *See* Defs.' Statement of Undisputed Facts ¶¶ 21-22.

Defendant Superintendent Carol Johnson had no involvement and no knowledge of Curry's decision not to renew Plaintiff's coaching duties for the 2006-2007 school-year, or any of Curry's actions towards Plaintiff.  (*Id*. ¶ 24.)

The Court notes that it is not clear whether Plaintiff disputes any of Defendants' assertions about the facts of this case, largely because Plaintiff's response brief does not comply with the Local Rules of Court.  Local Rule 7.2(d)(3) requires that

> the opponent of a motion for summary judgment who disputes any of the material facts upon which the proponent has relied. . . shall respond to the proponent's numbered designations, using the corresponding serial numbering, both in the response and by attaching to the response the precise portions of the record relied upon to evidence the opponent's contention that the proponent's designated material facts are at issue.[3]

Plaintiff has failed to properly respond to Defendants' Statements of Undisputed Fact by directly admitting or denying the facts as stated.  Instead Plaintiff has set forth his own statement of facts which are not serially numbered and otherwise do not address Defendants' statement of facts. *See* Pl.s Resp. Opp'n 2-3.  Plaintiff has also attached four affidavits and excerpts from three different depositions.  *See* Pl.s Resp. Opp'n, exs. A-D.  Because of Plaintiff's failure to follow the Local Rules, the Court is left to determine whether the additional record provided by Plaintiff actually disputes Defendants' assertions.

Based on the Court's review of the record produced by Plaintiff, the Court finds that Plaintiff has not disputed any of Defendants' statements of fact.  Plaintiff has not challenged Defendants' account of the events leading up to Plaintiff's removal as head football coach at East High School.  In fact, Plaintiff has largely alleged facts in his response brief about his job performance as athletics director at East and his removal from that position prior to the 2005-

---

[3] Local Rule 7.2(d)(3).

2006 school year.  However, Plaintiff's Complaint has not alleged that his removal as athletics director forms the basis for any of his claims against Defendants.  On the contrary, Plaintiff has alleged that his claims are based on his removal as head football coach and his "termination" from MCS.  *See* Compl. ¶¶ 4-6.  Plaintiff has failed to state a claim for his removal as athletics director, and as a result, the Court will not consider those facts in ruling on this Motion. Otherwise, Plaintiff has not disputed any of the statements set out in Defendants' Motion for Summary Judgment.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that a

judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.[4]

In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party.[5]  When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."[6]  It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."[7]  These facts

---

[4] Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Canderm Pharmacal, Ltd. v. Elder Pharms, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988).

[5] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[6] *Celotex*, 477 U.S. at 324.

[7] *Matsushita*, 475 U.S. at 586.

must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.[8]  When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-side that one party must prevail as a matter of law."[9]

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[10]  In this Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [her] asserted causes of action."[11]  Finally, the "judge may not make credibility determinations or weigh the evidence."[12]  Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."[13]

## ANALYSIS

Plaintiff has alleged a series of federal and state law claims based on his dismissal as

---

[8] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[9] *Id*. at 251-52 (1989).

[10] *Celotex*, 477 U.S. at 322.

[11] *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

[12] *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

[13] Fed. R. Civ. P. 56(c); *see also Celotex*, 477 U.S. at 322.

head football coach at East High School: violations of 42 U.S.C. § 1981 and § 1983 and the Tennessee Human Rights Act ("THRA") and the Tennessee Teachers Tenure Act.  The Court will analyze each of Plaintiff's claims in turn.

**I.      Plaintiff's Equal Protection Claim Pursuant to § 1983**

        Although Defendant does not address the issue, Plaintiff's equal protection claim pursuant to § 1983 is barred by the applicable statute of limitations.  The statute of limitations for § 1983 claims is governed by state law, and the limitations period in Tennessee for a civil rights action for damages is one year after the cause of action accrued.[14]  "The date on which the statute of limitations begins to run in a § 1983 action is a question of federal law."[15]  "The statute begins to run when the plaintiff knows or has reason to know of the injury upon which his action is based."[16]  The Court holds that removal from a coaching position should alert "a potential civil-rights plaintiff to protect his rights."[17]  In this case, Plaintiff was informed on March 10, 2006, that his contract as head football coach at East would not be renewed.  It appears from the record that Plaintiff was subsequently "surplused" within MCS.  Plaintiff tendered his resignation from MCS effective June 1, 2006.  It is undisputed that for the 2006-2007 school year, Plaintiff was employed by another public school system.  The Court finds then that Plaintiff's § 1983 claim accrued on March 10, 2006, and no later than June 1, 2006, the effective

---

[14] *Bruce v. Correctional Medical Services, Inc.*, 2010 WL 2842736 at *3 (6th Cir. July 21, 2010) (citing Tenn. Code Ann. § 28-3-104).

[15] *Eidson v. State of Tenn. Dep't of Children's Servs.,* 510 F.3d 631, 634 (6th Cir. 2007).

[16] *Bruce*, 2010 WL 2842736, at *3.

[17] *E.g. Cox v. Shelby State Cmty. Coll.*, 48 F. App'x 500, 507 (6th Cir. 2002) (holding that community college teacher's § 1981 claim for employment discrimination accrued when teacher was relieved of teaching duties after negative evaluation).

date of his resignation.  Plaintiff filed his original Complaint in state court on April 13, 2009, and

Defendants removed the case to federal court.  Plaintiff filed suit almost three years after he

ceased to be employed by MCS, well outside the one-year statute of limitations.[18]  Therefore, the

Court concludes that Plaintiff's § 1983 claims are time-barred, and Defendants' Motion for

Summary Judgment is **GRANTED** as to these claims.


## II.      Plaintiff's Claims Pursuant to § 1981

Plaintiff's Complaint makes a single passing reference to 42 U.S.C. § 1981 in his prayer

for relief where he requests a preliminary and permanent injunction for violations of that section.

(Compl. ¶ 6, count II.)  Defendants argue that they are entitled to summary judgment as to these

claims.  As an initial matter, the Court is not convinced that Plaintiff has even stated a claim

under § 1981 upon which relief may be granted.  Nevertheless, the Court finds that even if

Plaintiff had stated such a claim, Defendants are entitled to summary judgment.

"Enacted as part of the Civil Rights Act of 1866, 42 U.S.C. § 1981 provides that '[a]ll

persons within the jurisdiction of the United States shall have the same right in every State and

Territory to make and enforce contracts' without regard to race."[19]  The 1991 amendments to the

statute define the phrase "make and enforce contracts" to include the "making, performance,

modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms,

---

[18] Plaintiff alleges in his Complaint that Defendants' termination is continuing and on going.  However, the Court holds that Plaintiff has failed to show that his § 1983 claims might be saved by the continuing violations doctrine.

[19] *Talwar v. Catholic Healthcare Partners*, 258 F. App'x 800, 803 (6th Cir. 2007) (quoting 42 U.S.C. § 1981(a)).

and conditions of the contractual relationship."[20]  "Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship."[21]  Furthermore, the statute permits claims for "reverse discrimination" brought by white employees such as Plaintiff.[22]

### A. Defendant MCS and Defendants Carol Johnson and Fred Curry in Their Official Capacities

In so far as Plaintiff alleges a violation of § 1981 against Defendant MCS and Defendants Carol Johnson and Fred Curry in their official capacities, Plaintiff has failed to state a claim, and Defendants are entitled to summary judgment.  In *Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989), the United States Supreme Court held that § 1981 does not provide a cause cause of action against state actors.[23]  Just as in the case at bar, the *Jett* case involved the reassignment of a white football coach and schoolteacher on the recommendation of an African-American principal.[24]  The Supreme Court dismissed the coach's

---

[20] 42 U.S.C. § 1981(b).  Claims like Plaintiff's arising under the 1991 amendments to § 1981 have a four-year statute of limitations as provided by 28 U.S.C. § 1658.  *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382, 124 S.Ct. 1836, 1845 (2004); *Anthony v. BTR Auto. Sealing Sys., Inc.*, 339 F.3d 506, 514 (6th Cir. 2003).

[21] *Domino's Pizza, Inc. v. McDonald,* 546 U.S. 470, 476, 126 S.Ct. 1246, 163 L.Ed.2d 1069 (2006).

[22] *See Arendale v. City of Memphis*, 519 F.3d 587, 594 (6th Cir. 2008) (citing *McDonald v. Santa Fe Trail Transp. Co.,* 427 U.S. 273, 286-87, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976)).

[23] *Jett*, 491 U.S. at 732.  *See also Arendale*, 519 F.3d at 597-99 (holding that the 1991 amendments to § 1981 did not overrule *Jett*).

[24] *Jett*, 491 U.S. at 706-707.

race discrimination claim under § 1981 against the school district, holding that state actors such as a school district may not be sued directly under § 1981.[25]  Thus, Plaintiff's § 1981 claims against Defendant MCS must be dismissed.  For the same reasons, Plaintiff cannot maintain § 1981 claims against Defendants Carol Johnson or Fred Curry in their official capacities.[26] Therefore, Defendants' Motion for Summary Judgment is **GRANTED** as to these claims.

### B.    *Defendant Fred Curry in His Individual Capacity*

The Sixth Circuit has held that § 1981 does permit a cause of action against a state actor in his individual capacity.[27]  Thus, Plaintiff has a plausible claim against Defendant Fred Curry in his individual capacity.[28]  In order to make out a circumstantial claim of race discrimination under § 1981, a plaintiff must make the showings required under the familiar *McDonnell Douglas* framework.[29]  If Plaintiff can make out his prima facie case, "the burden of production then shifts to the defendant to articulate a legitimate, non-discriminatory reason for its actions."[30] If the defendant can meet his burden of production, the burden shifts back to the plaintiff to demonstrate that the proffered reason is a pretext.[31]  Defendants have briefed Plaintiff's claim as

---

[25] *Id.* at 731-32.

[26] *Grinter v. Knight*, 532 F.3d 567, 577 (6th Cir. 2008).  *See also Doe v. Herenton*, 2008 WL 2704537, at ** 4-5 (W.D. Tenn. July 3, 2008).

[27] *Grinter*, 532 F.3d at 577.

[28] Plaintiff's Complaint does not allege that Defendant Carol Johnson had any personal involvement in the decision to terminate Plaintiff's coaching duties at East.

[29] *Leadbetter v. Gilley,* 385 F.3d 683, 690 (6th Cir. 2004) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)).

[30] *Leadbetter,* 385 F.3d at 690.

[31] *Id.*

one for reverse discrimination and argue that Plaintiff has failed to prove such a claim.  Plaintiff argues that his is not a claim of reverse discrimination because African-Americans make up the majority of the citizens of Memphis, Tennessee, as well as the majority of MCS school board members and MCS football coaches.  Plaintiff has not cited any authority for the proposition that the Court should look only to the local community to define who is a minority for purposes of federal civil rights law.  Therefore, the Court will treat his claim as one for reverse discrimination.

For cases of reverse discrimination, a plaintiff must prove (1) background circumstances to support the suspicion that the defendant is that unusual employer who discriminates against the majority; (2) the plaintiff was qualified for his job and performed it satisfactorily; (3) despite his qualifications and performance, the plaintiff suffered an adverse employment action; and (4) the defendant treated differently employees who were similarly situated but were not members of the plaintiff's protected class.[32]

Based on the undisputed facts of this case and the record before the Court, the Court holds that Plaintiff has failed to adduce sufficient evidence to make out his prima facie case. More specifically, Plaintiff has established all but the fourth element of his claim.  First, Plaintiff has adduced evidence of  "circumstances to support the suspicion that the Defendant is that unusual employer who discriminates against the majority."  The Sixth Circuit has held that a plaintiff may establish this first prong by producing "evidence of the defendants' unlawful consideration of race in employment decisions in the past."[33]  Other evidence sufficient to prove

---

[32] *Id.*

[33] *Sutherland v. Michigan Dep't of Treasury,* 344 F.3d 603, 615 (6th Cir. 2003).

this element includes "the mere fact that an adverse employment decision was made by a member of a racial minority"[34] or that the decision-maker was a member of the same minority race as the employee he was treating more favorably than the plaintiff.[35]  A reverse discrimination plaintiff may also rely on other "evidence of a racially discriminatory environment."[36]  In this case, Plaintiff has shown that the adverse decision, Plaintiff's dismissal as head football coach at East, was made by Fred Curry, an African-American.  This evidence alone is sufficient to prove the first element.  There is also evidence that Curry treated African-American coaches more favorably than Plaintiff.  Curry replaced Plaintiff as head football coach with an African-American.  In one instance, Curry apparently approved funds for an African-American coach to attend a continuing education event after previously denying Plaintiff's request for lack of money to attend the same event.[37]  Based on these facts, Plaintiff has adduced evidence to make out the first element of his case.[38]

Plaintiff has satisfied the second and third elements of his prima facie case as well.

---

[34] *Arendale*, 519 F.3d at 603.

[35] *See Zambetti v. Cuyahoga Cmty. Coll.,* 314 F.3d 249, 257 (6th Cir. 2002) (finding the fact that the police chief was African-American and was promoting African-Americans sufficient to satisfy the first element of reverse discrimination claim); *Morris v. Family Dollar Stores of Ohio, Inc.*, 320 F. App'x 330, 339-340 (6th Cir. 2009).

[36] *Fuelling v. New Vision Med. Labs. LLC*, 284 F. App'x 247, 254 (6th Cir. 2008) (citing *Parker v. Baltimore & O. R. Co.*, 652 F.2d 1012, 1018 (D.C. Cir. 1981)).

[37] Pl.'s Aff. ¶ 12; Setler Aff. ¶ 7.

[38] Plaintiff has also proffered evidence that Curry approved, or at the very least acquiesced, in the reading of literary selections that described white people as "the enemy," suggested that white people "smelled like death," and endorsed the killing of white people. Norwood Aff. ¶ 11.  *See also* Setler Aff. ¶ 8; Pl.'s Aff. ¶ 12.  While markedly racial in its tone, the Court finds that this evidence is not directly relevant to Curry's decision-making in employment matters.

Plaintiff has shown that he was qualified for his job as head football coach and performed it satisfactorily.  Plaintiff emphasizes the success of East's football team under his leadership and the honors he received in recognition of his performance.  Despite his record at East, Plaintiff's contract as head football coach was not renewed by Defendant Curry following the 2005-2006 school year.

As for the fourth and final element of the prima facie, however, Plaintiff has failed to show that Defendant Curry treated a similarly situated employee outside of Plaintiff's protected class more favorably.  Plaintiff argues that he was replaced as head football coach by an African-American, thereby satisfying the fourth element of his claim.  However, it is Plaintiff's burden to prove that Defendant Curry treated a similarly situated employee outside of Plaintiff's protected class differently.  The Sixth Circuit has explained this element in a Title VII reverse discrimination case: "in order for employees to be considered similarly-situated the plaintiff must prove that all of the relevant aspects of his employment situation are nearly identical to those of the [minority] employees who[m] he alleges were treated more favorably."[39]  There need not be an "exact correlation" between the plaintiff and the comparator employee.[40]  Where an employee alleges discriminatory disciplinary action, the comparator employee receiving more favorable treatment must "have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of

---

[39] *Pierce v. Commonwealth Life Ins. Co.,* 40 F.3d 796, 802 (6th Cir.1994) (internal citations, ellipsis, and quotation marks omitted).

[40] *Morris*, 320 F. App'x at 340 (citing *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 352 (6th Cir.1998)).

them for it."[41]  There is evidence in the record that at the same time that Curry decided not to

renew Plaintiff's coaching contract, Curry retained the head boys basketball coach at East, an

African-American, despite Curry's concerns about the other coach's apparent insubordination.

Thus, a reasonable juror might conclude that Curry treated the basketball coach more favorably

than Plaintiff.

However, Plaintiff has failed to show that he and the basketball coach were similarly

situated in that they engaged in the same or similar conduct.  The stated reasons for Plaintiff's

dismissal were the lack of discipline and academic achievement among East football players;

Plaintiff's use of profanity with players captured by a television news camera; smoking on

campus after repeated warnings; his violation of MIAA rules about taping opponents; and his

management of the football team's budget, which ran a deficit of $15,800 the year prior to

Plaintiff's dismissal as coach.[42]  There is little in the record before the Court about the reasons

Curry dismissed the boys basketball coach the year following Plaintiff's dismissal.[43]  As for the

2005-2006 school year when Curry decided not to renew Plaintiff's contract, Plaintiff can only

show that Curry suspended the basketball coach for one game for using profanity and making an

---

[41] *Morris*, 320 F. App'x at 340 (citing *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 583 (6th Cir.1992)).

[42] Curry Aff. ¶¶ 5-10.

[43] In his affidavit, Curry simply states that he had concerns that the boys basketball coach "would not implement [Curry's] directives." Curry Aff. ¶ 13.  In fact, Curry asserts that he would have dismissed the basketball coach at the same time that he dismissed Plaintiff but felt that dismissing both would have been "too disruptive to the school." *Id.*  Plaintiff's contention that Curry dismissed the basketball coach only after he learned of this lawsuit has no basis in fact.  Pl.'s Aff. 14.  Curry dismissed the basketball coach after the 2006-2007 school year, and Plaintiff filed this suit on April 13, 2009.

14

obscene gesture at the crowd during a game.[44]  Unlike Plaintiff's public use of profanity, there is

no evidence that the basketball coach's profanity ever appeared on a news broadcast.  According

to Plaintiff, the basketball coach was also known to drink on campus, both after school and

following basketball games.[45]  But Plaintiff has not shown that Curry was ever aware of the

basketball coach's drinking on campus much less that Curry did not address it during the 2005-

2006 school year.  Moreover, the stated reasons for Plaintiff's dismissal were not only the use of

profanity in front of a television news crew and smoking on campus but also his violation of

MIAA rules about taping opponents and his management of the football team's budget.  There is

no evidence that the boys basketball coach was ever disciplined for violating MIAA rules or

clashed with Curry over a deficit as large as $15,800 in the basketball team's budget during the

2005-2006 school year.  Therefore, the Court finds that Plaintiff cannot show that a similarly-

situated employee received more favorable discipline from Curry for the same or similar

conduct.[46]

Based on Plaintiff's failure to prove the fourth element of his § 1981 reverse

discrimination claim, the Court concludes that Defendant Curry is entitled to summary judgment

on that claim.  Even if Plaintiff had met his initial burden, the Court would still grant summary

judgment in Curry's favor.  Plaintiff has failed to offer any evidence that Curry's legitimate, non-

---

[44] Norwood Aff. ¶ 14.

[45] Pl.'s Aff. ¶ 14; Norwood Aff. ¶ 14.

[46] Plaintiff cites the example of another coach at East who had a history of serious
disciplinary issues within MCS.  Pl.'s Aff. ¶ 14.  Unlike the problems leading up to Plaintiff's
non-renewal, there is no evidence that this other coach engaged in his misconduct while Curry
was principal of East or that Curry was the decision-maker in that coach's past infractions.
Therefore, the Court finds evidence about the other coach largely irrelevant to issues presented
here.

discriminatory reason for relieving Plaintiff of his coaching responsibilities at East were pretext for discrimination. To make such a showing, Plaintiff must prove that (1) Defendant's stated reasons had no basis in fact, (2) the stated reasons were not the actual reasons, or (3) the stated reasons were insufficient to explain Defendant's actions.[47] The Court holds that Plaintiff cannot make any of these showings. Plaintiff has not presented any evidence to show that Curry's stated reasons had no basis in fact. For example, Plaintiff never denies that he smoked on the campus of East High School and ignored Curry's directives not to do so. Plaintiff does not deny that he used profanity with football players, which was captured on tape and shown on local news. Plaintiff does not deny that the football budget for the 2004-2005 school year ran a $15,800 deficit.[48] Plaintiff does not deny that he violated MIAA policy by videotaping another school's football team.[49] Furthermore, Plaintiff has not come forward with any proof that Curry's stated reasons were not the actual reasons for the non-renewal of his coaching contract. Finally, Plaintiff has not shown that the stated reasons were insufficient to explain Curry's decision not to retain Plaintiff as head football coach. As a result, Plaintiff cannot show that Curry's reasons for not renewing his coaching contract were pretext for reverse discrimination. Therefore, Defendants' Motion for Summary Judgment is **GRANTED** as to this issue.

### III.    Plaintiff's State Law Claims

---

[47] *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 573 (6th Cir. 2000).

[48] While Plaintiff has also adduced evidence about the common budgeting and spending practices for football purchases at MCS schools, Plaintiff never denies that his program ran the $15,800 deficit for the 2004-2005 school year. Weedon ¶¶ 7-8.

[49] Plaintiff has adduced evidence that videotaping was a common, if not informal, practice among MCS football coaches. Norwood Aff. ¶ 6.

16

It is settled law that the district court may exercise supplemental jurisdiction over state law claims, even after the basis for removal to federal court has been eliminated, "if recommended by a careful consideration of factors such as judicial economy, convenience, fairness, and comity."[50]  Generally, if a federal claim is dismissed before trial, the state claims should be dismissed as well.[51]  Having granted Defendants' summary judgment as to Plaintiff's § 1983 and § 1981 claims, Plaintiff is left only with claims for relief under Tennessee law. Therefore, the Court declines to exercise its supplemental jurisdiction over Plaintiff's state law claims.  Without reaching their merits, those claims are hereby dismissed.

## CONCLUSION

The Court holds that Plaintiff has failed to state any of his 42 U.S.C. § 1983 claims and § 1981 claims against Defendant MCS and Defendants Carol Johnson and Fred Curry in their official capacities.  As for Plaintiff's § 1981 claim against Defendant Curry in his individual capacity, the Court concludes that Plaintiff has failed to carry his burden to make out his prima facie case or show that Defendant's proffered reasons are pretext for reverse discrimination.  The Court declines to exercise its supplemental jurisdiction over Plaintiff's state law claims. Therefore, Defendants' Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**

---

[50] *See Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

[51] *Taylor v. First of Am. Bank-Wayne,* 973 F.2d 1284, 1287 (6th Cir. 1992).

17

S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: October 29th, 2010.